UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rachael Johnson and Reade Adams, individually and on behalf of those similarly situated,

Plaintiffs,

v.

Hennepin Healthcare System, Inc.,

Defendant.

Court File No. 24-CV-02129 (PJS/DTS)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ........ 1

BACKGROUND ........ 1

I. THE PARTIES ........ 1

II. HENNEPIN'S WEBSITE ........ 1

III. HENNEPIN'S WEBSITE PRIVACY POLICY ........ 2

LEGAL STANDARDS ........ 3

ARGUMENT ........ 4

I. THE COMPLAINT VIOLATES THE RULE 8 PLEADING STANDARD ........ 4

II. THE HHS GUIDANCE ON WHICH PLAINTIFFS RELY HAS BEEN VACATED ........ 5

III. PLAINTIFFS FAIL TO STATE AN ECPA CLAIM (COUNT I) AND A MINNESOTA WIRETAP ACT CLAIM (COUNT II) ........ 6
   A. Plaintiffs cannot maintain Wiretap Claims against Hennepin ........ 7
   B. Plaintiffs fail to allege an unlawful "interception"; the "party exception" applies ........ 8
   C. The crime-tort exception does not apply ........ 10
   D. Plaintiffs fail to state a claim for "procurement" or "use ........ 14

IV. PLAINTIFFS FAIL TO STATE AN INVASION-OF-PRIVACY CLAIM (COUNT III) ........ 15

V. PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM (COUNT IV) ........ 18

VI. PLAINTIFFS FAILED TO STATE A BREACH-OF-IMPLIED-CONTRACT CLAIM (COUNT V) ........ 19

VII. PLAINTIFFS FAIL TO STATE AN UNJUST-ENRICHMENT CLAIM (COUNT VI) ........ 21

VIII. PLAINTIFFS FAIL TO STATE A MINNESOTA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT CLAIM (COUNT VII) ........ 23
   A. Plaintiffs fail to allege a future harm ........ 23
   B. Plaintiffs cannot maintain a MUDTPA claim against Hennepin ........ 25

C. Plaintiffs fail to plausibly allege deceptive statements ..... 25
D. Plaintiffs fail to allege a causal nexus ..... 26
E. Plaintiffs' MUDTPA claim is moot because Hennepin has disabled tracking technologies on its website ..... 27

IX. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MINNESOTA CONSUMER FRAUD ACT (COUNT VIII) ..... 27
A. Plaintiffs cannot maintain an MCFA claim against Hennepin ..... 28
B. Plaintiffs fail to allege the MCFA claim may proceed under Minnesota's private attorney general statute ..... 28
C. The Complaint fails to allege a plausible misrepresentation or omission ..... 29
D. The Complaint fails to allege the necessary scienter for an MCFA claim ..... 33
E. The Complaint does not allege a misrepresentation "in connection with the sale of any merchandise ..... 33
F. The Complaint does not allege a causal nexus between any wrongful conduct and any harms ..... 34

X. PLAINTIFFS FAIL TO STATE A MINNESOTA HEALTH RECORDS ACT CLAIM (COUNT IX) ..... 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Battle Creek*,
250 F.3d 980 (6th Cir. 2001) .................... 7, 8

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-cv-01110, 2024 WL 3075865 (N.D. Tex. June 20, 2024).................. 6, 37, 38

*Amann v. Allianz Income Mgmt. Servs., Inc.*,
No. A09-1891, 2010 WL 3220061 (Minn. Ct. App. Aug. 17, 2010) .................... 21, 22

*Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*,
551 F.3d 812 (8th Cir. 2009) .................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................... 4, 21

*Azarax, Inc. v. Syverson*,
398 F. Supp. 3d 425 (D. Minn. 2019).................... 19

*Barclay v. Icon Health & Fitness, Inc.*,
No. 19-cv-2970, 2022 WL 486999 (D. Minn. Feb. 17, 2022)......................... 23, 24, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................... 3, 4

*Bernstein v. Extendicare Health Servs., Inc.*,
607 F. Supp. 2d 1027 (D. Minn. 2009).................... 30, 31

*Bernstein v. Extendicare Health Servs., Inc.*,
653 F. Supp. 2d 939 (D. Minn. 2009).................... 30, 34

*Bodah v. Lakeville Motor Express, Inc.*,
663 N.W.2d 550 (Minn. 2003).................... 16

*Branson Label, Inc. v. City of Branson*,
793 F.3d 910 (8th Cir. 2015) .................... 3

*Brown v. Hennepin Healthcare Sys., Inc.*,
No. A22-0700, 2023 WL 125859 (Minn. Ct. App. Jan. 9, 2023) (treating Hennepin as a government entity) .................... 7

*C.L.D. v. Wal-Mart Stores, Inc.*,
79 F. Supp. 2d 1080 (D. Minn. 1999).................... 16

*Cady v. Bush*,
166 N.W.2d 358 (Minn. 1969) ........ 22

*Caldas v. Affordable Granite & Stone, Inc.*,
820 N.W.2d 826 (Minn. 2012) ........ 21, 23

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ........ 9

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ........ 3

*Caro v. Weintraub*,
No. 3:09cv00335, 2009 WL 2358919 (D. Conn. July 31, 2009), *aff'd*,
618 F.3d 94 (2d Cir. 2010) ........ 9, 11, 13, 14

*Chey v. Metro. Airports Comm'n*,
No. 22-CV-1429, 2023 WL 2308272 (D. Minn. Mar. 1, 2023) ........ 19

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ........ 24

*Doe 169 v. Brandon*,
845 N.W.2d 174 (Minn. 2014) ........ 18

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 12

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 10, 11, 12

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
678 F.3d 659 (8th Cir. 2012) ........ 23, 27, 28

*Expose v. Thad Wilderson & Assocs., P.A.*,
863 N.W.2d 95 (Minn. Ct. App. 2015), *aff'd*, 889 N.W.2d 279 (Minn.
2016) ........ 35

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ........ 20

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994) ........ 15

*Furlow v. Madonna Summit of Byron*,
No. A19-0987, 2020 WL 413356 (Minn. Ct. App. Jan. 27, 2020) ........ 35, 36, 37

*Gisairo v. Lenovo (United States) Inc.*,
516 F. Supp. 3d 880 (D. Minn. 2021) .................................................... 28, 29

*Glick v. W. Power Sports, Inc.*,
944 F.3d 714 (8th Cir. 2019) .......................................................................... 4

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ............................................................................ 9

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................ 17

*Grady v. Progressive Direct Ins. Co.*,
643 F. Supp. 3d 929 (D. Minn. 2022) .................................................... 32, 33

*Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*,
850 N.W.2d 682 (Minn. 2014) ............................................................... 30, 32

*Grp. Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001) .......................................................................... 26

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .................................................... *passim*

*Gurman v. Metro Hous. & Redevelopment Auth.*,
842 F. Supp. 2d 1151 (D. Minn. 2011) ............................................................ 5

*Hall v. Centerspace, LP*,
No. 22-cv-2028, 2023 WL 3435100 (D. Minn. May 12, 2023) ............................ 21, 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................. 17, 18

*Hari v. Smith*,
No. 20-cv-1455, 2022 WL 1122940 (D. Minn. Jan. 31, 2022) .......................... 15

*Headwaters Rural Util. Ass'n, Inc. v. City of Corcoran*,
No. CT 03-013842, 2004 WL 5724110 (Minn. Dist. Ct. Oct. 1, 2004) ................ 25

*Holderfield v. Thyssenkrupp Elevator Corp.*,
No. 1:20-cv-01599, 2022 WL 980638 (E.D. Va. Mar. 30, 2022) ............................ 4

*Jaskulske v. State Farm Mut. Auto. Ins. Co.*,
No. 14-cv-869, 2014 WL 5530758 (D. Minn. Nov. 3, 2014) ................................ 24

*Jurgens v. Build.com, Inc.*,
No. 4:17-cv-00783, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) .............................. 8

*Khan v. Child. Nat'l Health Sys.*,
188 F. Supp. 3d 524 (D. Md. 2016) ........................................................................ 20

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ............................................................ 6, 10, 27, 36

*Lehman v. Zumbrota-Mazeppa Pub. Schs.*,
No. A04-1226, 2005 WL 894756 (Minn. Ct. App. Apr. 19, 2005) ............................ 16

*Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*,
742 F.3d 845 (8th Cir. 2014) ................................................................................ 22

*Luckey v. Alside, Inc.*,
245 F. Supp. 3d 1080 (D. Minn. 2017) ................................................................... 26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................... 24

*Ly v. Nystrom*,
615 N.W.2d 302 (Minn. 2000) ........................................................................... 28, 33

*Mekhail v. N. Mem'l Health Care*,
No. 23-440, 2024 WL 1332260 (D. Minn. Mar. 28, 2024) ................................. *passim*

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) ............................................................................. 11, 14

*Mitchell v. Kurkowski*,
No. 22-490, 2022 WL 17176888 (D. Minn. Nov. 23, 2022) ........................................ 5

*Monroe v. Ark. State Univ.*,
495 F.3d 591 (8th Cir. 2007) .................................................................................... 7

*Moua v. Jani-King of Minn., Inc.*,
613 F. Supp. 2d 1103 (D. Minn. 2009) .............................................................. 33, 34

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
951 F.3d 952 (8th Cir. 2020) ............................................................................... 2, 27

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..................................................................................... 13

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ................................*passim*

*Olen v. N. Tier Retail, LLC*,
No. 11-2665, 2012 WL 1580994 (D. Minn. May 4, 2012) ........................................ 24

*Park v. U.S. Forest Serv.*,
205 F.3d 1034 (8th Cir. 2000) ..................................................................................... 23

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ....................................................................................... 14

*Pickford v. Kemp & Assocs., Inc.*,
No. 19-CV-997, 2019 WL 3537219 (D. Minn. Aug. 2, 2019) ..................................... 33

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ...................................................................................... 13

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-cv-00330, 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024) ............................... 9

*Rasmusson v. Chisago Cnty.*,
991 F. Supp. 2d 1065 (D. Minn. 2014) ........................................................................ 16

*Rhoades v. Lourey*,
No. A18-1120, 2019 WL 1006804 (Minn. Ct. App. Mar. 4, 2019) ................ 35, 36, 37

*Rodriguez v. FastMed Urgent Care, P.C.*,
No. 5:23-CV-403, 2024 WL 3541582 (E.D.N.C. July 24, 2024) ................................ 12

*Seitz v. City of Elgin*,
719 F.3d 654 (7th Cir. 2013) ..................................................................................... 7, 8

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
11 F. Supp. 3d 933 (D. Minn. 2014) ............................................................................ 29

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir.
2018) ............................................................................................................................ 36

*Song v. Champion Petfoods USA, Inc.*,
No. 18-CV-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020), *aff'd*,
27 F.4th 1339 (8th Cir. 2022) ...................................................................................... 26

*In re St. Jude Med., Inc.*,
522 F.3d 836 (8th Cir. 2008) ....................................................................................... 34

*Stewart v. City of Okla. City*,
47 F.4th 1125 (10th Cir. 2022) .................... 14

*Thompson v. Dulaney*,
970 F.2d 744 (10th Cir. 1992) .................... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................... 24

*Tri-State Bobcat, Inc. v. FINN Corp.*,
338 F. Supp. 3d 971 (D. Minn. 2018) .................... 19

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) .................... 11, 14

*United States v. Phillips*,
540 F.2d 319 (8th Cir. 1976) .................... 13

*Wilson v. McRae's US Mail Serv. Inc.*,
No. 20-01664, 2020 WL 6808861 (D. Minn. Oct. 29, 2020) .................... 7

*WinRed, Inc v. Ellison*,
581 F. Supp. 3d 1152 (D. Minn. 2022), *aff'd*, 59 F.4th 934 (8th Cir. 2023) .................... 27

*Zean v. Fairview Health Servs.*,
858 F.3d 520 (8th Cir. 2017) .................... 27

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................... 10

**Statutes**

Electronic Communications Privacy Act .................... *passim*

Health Insurance Portability and Accountability Act .................... *passim*

Minnesota Consumer Fraud Act .................... *passim*

Minnesota Health Records Act .................... *passim*

Minnesota Uniform Deceptive Trade Practices Act .................... *passim*

Minnesota Wiretap Act .................... *passim*

Minn. Stat. §8.31, subd. 3a .................... 28

Minn. Stat. §383B.901 .......... 1

Minn. Stat. §383B.919 .......... 7, 15

Minn. Stat. §466.03, subd. 8 .......... 16, 18

**Other Authorities**

45 C.F.R. §160.103 .......... 5

*Person*, *Black's Law Dictionary* (12 ed. 2024) .......... 25

## INTRODUCTION

Defendant Hennepin Healthcare System, Inc. ("Hennepin") moves to dismiss Plaintiffs' Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I. THE PARTIES.

Hennepin is a Minnesota nonprofit healthcare system that operates a trauma center, hospital, and multiple primary care clinics in Minneapolis and throughout Hennepin County. (Doc. 1 ¶¶2, 16.) Hennepin is a public corporation created by state statute that "operat[es] as a subsidiary" of Hennepin County. Minn. Stat. §383B.901.

Plaintiffs Rachael Johnson and Reade Adams allege they are patients of Hennepin. (Doc. 1 ¶¶76, 93.) They claim to have used Hennepin's website and patient portal to research health conditions, search for doctors, schedule appointments, and conduct other related activities. (*Id.* ¶¶77-82, 94-98.) Plaintiff Johnson alleges having Instagram, Facebook, and Google accounts. (*Id.* ¶80.) Plaintiff Adams alleges having a Facebook account. (*Id.* ¶97.)

### II. HENNEPIN'S WEBSITE.

Hennepin maintains the website www.hennepinhealthcare.org. (*Id.* ¶2.) This website is publicly accessible by anyone with internet access. (*See id.* ¶81.) Hennepin also maintains a separate, password-protected patient portal that can only be accessed by

patients with an account. (*See* Doc. 1 ¶2; *see also* Hennepin Healthcare MyChart, https://mychart.hcmc.org/MyChart (last visited Sept. 25, 2024).)

Plaintiffs allege that Hennepin installed a Meta Pixel ("Pixel") on its website that allegedly transmitted public website visitors' activities, such as the website pages visited by a user, to Meta.[1] (Doc. 1 ¶¶3-4.)[2] The Complaint further alleges that Hennepin installed "Google tracking code," which allegedly disclosed information to Google. (*Id.* ¶¶10, 62-64, 71.)

## III. HENNEPIN'S WEBSITE PRIVACY POLICY.

Plaintiffs allege Hennepin's website includes "privacy policies" consisting of a privacy policy and a Notice of Privacy Practices (*See id.* ¶¶108-17; *see also* Decl. of Natasha Robinson, Exs. A ("Privacy Policy"), B ("Privacy Practices").)[3] The Privacy Policy describes how Hennepin collects, uses, and discloses information gathered by its website. (Privacy Policy at 1-3.) The Privacy Policy informs users that, "[b]y using our website you are consenting to the collection, use, and disclosure of your Personal

[1] Facebook and Instagram are part of Meta. *Introducing Meta: A Social Technology Company*, Meta Platforms, Inc. (Oct. 28, 2021), https://about.fb.com/news/2021/10/facebook-company-is-now-meta.

[2] Plaintiffs also allege that patient communications and search results within the MyChart portal are shared with Meta, while admitting that "Plaintiffs are unable to determine whether Pixels were embedded inside Defendant's MyChart Portal." (Doc. 1 ¶¶2, 29.) This allegation is groundless and untrue.

[3] As the Complaint quotes from and cites to these documents, their contents are alleged in the Complaint and are incorporated therein by reference. (*See* Doc. 1 ¶¶108-17.) Therefore, the Court may consider them for this Motion. *See Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955-56 (8th Cir. 2020) (considering a defendant's website on a motion to dismiss as it was necessarily embraced by the complaint).

Information as described in this policy. If you do not agree with this policy, do not use our website." (*Id.*) The Privacy Policy advises users that Hennepin "may disclose your Personal Information to third parties who complete transactions or perform services on our behalf or for your benefit." (*Id.*) It further discloses that Hennepin's website uses cookies, unless turned off by the user, and Google Analytics to identify and track users and improve users' experience on the website. (*Id.*) Hennepin's Privacy Practices also notifies users that Hennepin "gather[s] information about you" including "health information." (Privacy Practices at 1-2.) The Privacy Practices provide notice that Hennepin uses and discloses such "health information" to third parties in certain circumstances. (*Id.*)

## **LEGAL STANDARDS**

Plaintiffs bear "[t]he burden of establishing that [their] cause of action lies within the limited jurisdiction of the federal courts." *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack . . . .'" *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). For purposes of this Motion, Hennepin assumes the truth of the factual allegations in Plaintiffs' Complaint; thus, in examining whether this Court has subject-matter jurisdiction over Plaintiffs' claims, the Court must afford Plaintiffs "the same protections as [they] would [receive] defending against a motion brought under Rule 12(b)(6)." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain enough specific facts "to raise a right to relief above the speculative level." *Id.* at 555. A complaint needs "more than labels and conclusions." *Id.*; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the Court accepts as true the Complaint's factual allegations and draws reasonable inferences in the light most favorable to Plaintiffs, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## ARGUMENT

### I. THE COMPLAINT VIOLATES THE RULE 8 PLEADING STANDARD.

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted).

The Complaint fails to do this. It uses broadly defined terms that lump allegations together, which unfairly burden Hennepin and the Court by requiring them to guess at the complained-of conduct. *See Holderfield v. Thyssenkrupp Elevator Corp.*, No. 1:20-cv-01599, 2022 WL 980638, at *11, n.4 (E.D. Va. Mar. 30, 2022) (dismissing complaint and noting the use of broad terms "adds to the difficulty of . . . construing the allegations and any legal basis for Plaintiff's claims"). For example, Plaintiffs define "Personal Information" to include both "Personal Health Information ('PHI') and Personally Identifiable Information ('PII')." (Doc. 1 ¶1.) Plaintiffs incorrectly imply that laws protect

"Personal Information" (as defined by Plaintiffs) when they do not. (*See, e.g.*, *id.* ¶224.) This definition is even more problematic and misleading because "PHI" is a term commonly used by health care providers like Hennepin and by regulators to refer to "***protected*** health information" as defined by 45 C.F.R. §160.103. Plaintiffs, however, define "PHI" and therefore "Personal Information" as "***personal*** health information." (Doc. 1 ¶1 (emphasis added).) Similarly, Plaintiffs define "Tracking Tools" as "third-party tracking technologies," (Doc. 1 ¶1), but fail to identify which third-party tracking technologies Hennepin is alleged to have utilized.

Rule 8, *Twombly*/*Iqbal*, and basic principles of fairness do not permit an approach to pleading that lumps allegations together because it does not give defendants fair notice of what they allegedly did. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) ("It is the plaintiffs' burden, under both Rule 8 and Rule 11 . . . to plead [its] claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them."); *see also Mitchell v. Kurkowski*, No. 22-490, 2022 WL 17176888, at *7 (D. Minn. Nov. 23, 2022) (dismissing claims in part because they lump allegations against defendants together). The Court should dismiss the Complaint.

## II. THE HHS GUIDANCE ON WHICH PLAINTIFFS RELY HAS BEEN VACATED.

Plaintiffs' Complaint relies throughout on a privacy bulletin ("Guidance") issued by the U.S. Department of Health and Human Services ("HHS") to support their claims, particularly their allegations that Hennepin's conduct violates the Health Insurance

Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936. (*See, e.g.*, Doc. 1 ¶¶24, 26, 145-54, 185.) In June 2024, the relevant portions of that Guidance were vacated by a federal court that held that a website visit is, at most, "indicative" of health information—beyond the definition of individually identifiable health information. *See Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-01110, 2024 WL 3075865, at *17 (N.D. Tex. June 20, 2024); *see also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) ("The interpretation of IIHI offered by HHS in its [original] guidance goes well beyond the meaning of what the statute can bear."). Thus, the Court should not consider the Guidance in determining whether Hennepin's conduct was lawful.

## III. PLAINTIFFS FAIL TO STATE AN ECPA CLAIM (COUNT I) AND A MINNESOTA WIRETAP ACT CLAIM (COUNT II).

Plaintiffs allege that Hennepin unlawfully intercepted, disclosed, and used their electronic communications in violation of Title I of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§2511(1)(a)-(d), and the Minnesota Protection of Communications Act ("Minnesota Wiretap Act" of "MWA"), Minn. Stat. §626A.02. (*See* Doc. 1 ¶¶170-90, 192-208.)

Plaintiffs' ECPA and MWA claims ("Wiretap Claims") should be dismissed because Hennepin cannot be sued for such claims. Further, Plaintiffs fail to state Wiretap Claims because Hennepin was a party to Plaintiffs' alleged communications, and therefore did not unlawfully intercept those communications, and the crime-tort exception does not apply.

### A. Plaintiffs cannot maintain Wiretap Claims against Hennepin.

Because the MWA is "nearly identical" to its federal counterpart, Minnesota courts analyze the statutes together. *Wilson v. McRae's US Mail Serv. Inc.*, No. 20-01664, 2020 WL 6808861, at *4 (D. Minn. Oct. 29, 2020), *R.&R. adopted*, 2020 WL 6802395 (D. Minn. Nov. 19, 2020) (stating §2511 and section 626A.02 are "nearly identical" and recommending 12(b)(6) dismissal of wiretap claims). Plaintiffs' allegations are similar for both statutes. (*Compare* Doc. 1 ¶¶170-90 with *id.* ¶¶192-208.) Accordingly, Hennepin jointly addresses Counts I and II.

Hennepin is a government entity for purposes of this litigation. *See* Minn. Stat. §383B.919 ("The corporation shall be a 'municipality' for purposes of tort liability pursuant to chapter 466 . . . ."); *see also Brown v. Hennepin Healthcare Sys., Inc.*, No. A22-0700, 2023 WL 125859, at *2-3 (Minn. Ct. App. Jan. 9, 2023) (treating Hennepin as a government entity). Arguments raising immunity are particularly appropriate at the motion-to-dismiss stage "because '[i]mmunity from suit is effectively lost if the party claiming it is erroneously forced to stand trial.'" *Monroe v. Ark. State Univ.*, 495 F.3d 591, 593 (8th Cir. 2007) (citation omitted).

Plaintiffs' Wiretap Claims should be dismissed because there is no private cause of action against municipalities for violations of ECPA §2511(1) or MWA §626A.02. *See Seitz v. City of Elgin*, 719 F.3d 654, 656 (7th Cir. 2013); *but see Adams v. City of Battle Creek*, 250 F.3d 980, 985 (6th Cir. 2001).[4] In *Seitz*, the Seventh Circuit examined §2520(a),

[4] The *Seitz* court correctly distinguished *Adams* by observing "*Adams* . . . did not consider that §2520 creates no substantive rights and did not consider whether other parts of the

which provides "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity other than the United States, which engaged in that violation."[5] *Id.* (quoting 18 U.S.C. §2520(a)). ECPA "defines 'person' . . . [as] 'any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."[6] *Id.* (quoting 18 U.S.C. §2510(6)). The court correctly concluded ECPA "created a cause of action only against 'persons' and then excluded municipalities from the definition of 'persons.' It created no cause of action against municipalities or any other governmental unit." *Id.* The same is true with respect to the MWA, which states that only a "person" can violate §626A.02 and, therefore, only a person—and not a municipality like Hennepin—can be sued. *See id.* at 658. Accordingly, Plaintiffs' Wiretap Claims should be dismissed.

### B. Plaintiffs fail to allege an unlawful "interception"; the "party exception" applies.

Even if Plaintiffs could assert Wiretap Claims against a municipality, Plaintiffs have not alleged that Hennepin engaged in an unlawful interception. *See* §2511(1); Minn. Stat. §626A.02, subd. 1; *Jurgens v. Build.com, Inc.*, No. 4:17-cv-00783, 2017 WL 5277679, at

[ECPA] created substantive rights enforceable against an entity." 719 F.3d at 659. Instead, "*Adams* inappropriately consulted the legislative history of a statute that does not truly parallel the [ECPA]." *Id.* at 659-60.

[5] The relevant language in section 626A.13, subdivision 1 is identical to the language in §2520(a).

[6] Section 626A.01, subdivision 2 defines "[p]erson" as "any individual, partnership, corporation, joint stock company, trust, or association, including but not limited to, the subscriber to the telephone or telegraph service involved and any law enforcement officer."

*4 (E.D. Mo. Nov. 13, 2017). Under ECPA, an "interception" is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4); *see also* Minn. Stat. §626A.01, subd. 5.

However, a "party to a communication" cannot unlawfully intercept that same communication, this is known as the "party exception." *See* §2511(2)(d); Minn. Stat. §626A.02, subd. 2(d); *Mekhail v. N. Mem'l Health Care*, No. 23-440, 2024 WL 1332260, at *4 (D. Minn. Mar. 28, 2024); *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *3-4 (D. Minn. June 11, 2009). Where the alleged interceptor is "the intended recipient of a communication [it] is necessarily one of its parties" and cannot be held liable under ECPA. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143, 153 (3d Cir. 2015); *see also R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-cv-00330, 2024 WL 3730609, at *2 (C.D. Cal. Aug. 7, 2024) (dismissing ECPA claim because "[c]ourts across the country, including others in this District, agree that a hospital is a party to the communication where it uses a pixel to track activity on its website"); *Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *3 (D. Minn. Mar. 26, 2024) (applying the party exception because the defendant was the intended recipient even if the "intended recipient . . . duplicates and forwards the communication to a third party"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) (holding that the intended recipient is a party to the communications); *Caro v. Weintraub*, No. 3:09cv00335, 2009 WL 2358919, at *3-4 (D. Conn. July 31, 2009), *aff'd*, 618 F.3d 94 (2d Cir. 2010).

The party exception applies. Plaintiffs allege that Hennepin was the intended recipient of Plaintiffs' communications on Hennepin's website. ECPA and MWA explicitly exclude liability under these circumstances. *See* §2511(2)(d); Minn. Stat. §626A.02, subd. 2(d); *Okash*, 2024 WL 1285779, at *3-4; *Kurowski*, 2023 WL 2349606, at *4.

Additionally, Plaintiffs failed to allege that Hennepin intercepted or disclosed the "contents" of their communications. *See* §2510(4), (8); Minn. Stat. §626A.01, subds. 5, 8. The "contents" of a communication refers to the "substance" of the communication. *See* §2510(8). In *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-08 (9th Cir. 2014), the court held that "content" under ECPA "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." The *Zynga* court also held that information such as names, Facebook IDs, and webpage addresses did not constitute "contents" under ECPA. *Id.* Here, because Plaintiffs allege that "record information" such as identification and address information were disclosed, that information does not qualify as ECPA "contents." *But see Mekhail*, 2024 WL 1332260, at *3 (rejecting a similar argument); *Grp. Health Plan*, 709 F. Supp. 3d at 718 (same).

### C. The crime-tort exception does not apply.

Plaintiffs assert that the party exception does not apply under the "crime-tort" exception set forth in §2511(2)(d). This argument fails.

The crime-tort exception is narrow. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514-15 (S.D.N.Y. 2001). A plaintiff seeking to invoke the crime-tort exception at

the motion-to-dismiss stage "must plead sufficient facts" supporting an inference that it applies. *Caro*, 618 F.3d at 100. The exception has four elements:

1. Purpose: The interception must have been "for the purpose of committing any criminal or tortious act," *id.* at 98 (quoting §2511(2)(d));
2. Independence: The intent "to commit a crime or tort [must have been] independent of the act of recording itself," *id.* at 100;
3. Contemporaneousness: The defendant must have had the independent intent "[a]t the time of the recording," *id.* at 99; and
4. Recorded Victim: The defendant must have intended to harm the party whose communications was intercepted, *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971).

If a plaintiff fails to plausibly plead even one of the elements, the exception does not apply, and the Wiretap Claims should be dismissed. Plaintiffs fail to plausibly plead any of the four elements.

**1. Plaintiffs do not allege a tortious or criminal *purpose.***

A plaintiff must allege not just that a tortious or criminal result occurred, but also that the defendant had this result as its "purpose" or "objective." *Caro*, 618 F.3d at 100; *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013); *DoubleClick*, 154 F. Supp. 2d at 517 (rejecting argument that a "'tortious purpose' exists wherever an intentional action is later determined to have constituted a tort").

Plaintiffs assert the empty legal conclusion that Hennepin's purpose was to commit an invasion of privacy, violation of MUDTPA, and violation of HIPAA. (Doc. 1 ¶¶182-

83.) Plaintiffs do not plausibly allege Hennepin acted with the ***purpose*** or the ***objective*** to commit these violations. *See Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403, 2024 WL 3541582, at *5 (E.D.N.C. July 24, 2024) (dismissing ECPA claim because healthcare system was party to communications and plaintiff's allegations regarding application of the crime-tort exception were speculative legal conclusions).

Plaintiffs allege Hennepin's purpose was "future ad targeting and marketing" to increase profits (Doc. 1 ¶4; *see also id.* ¶¶7, 28-29, 116, 180, 216.) Other courts have found tortious purpose lacking in analogous contexts. *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (holding that using tracking technologies "for market research and consumer analysis solely for the benefit of" the defendant does not "sufficiently allege[] a tortious purpose" even if defendant violated HIPAA); *DoubleClick*, 154 F. Supp. 2d at 518-19 (crime-tort exception inapplicable because plaintiffs failed to allege defendant had intent to commit torts when it allegedly intercepted plaintiffs' communications); *but see Mekhail*, 2024 WL 1332260, at *5 n.4. Here, too, this element is not met.

Accordingly, dismissal of Plaintiffs' Wiretap Claims is warranted because, although Plaintiffs have alleged a pecuniary purpose, they have not alleged any injurious purpose. For instance, Plaintiffs have not alleged that Hennepin acted with any knowledge that its actions were unlawful (assuming they were, *arguendo*). Plaintiffs have not satisfied the Rule 12 pleading standard regarding the "purpose" element.

### 2. Plaintiffs do not allege an *independent* tort or crime.

For the crime-tort exception to apply, Plaintiffs must allege a crime or tort that is independent of the interception itself. *See United States v. Phillips*, 540 F.2d 319, 327 n.5 (8th Cir. 1976) (rejecting argument that recording itself was tortious); *Okash*, 2024 WL 1285779, at *4 ("It is well established that the crime-tort exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." (cleaned up)); *see also Caro*, 618 F.3d at 100 ("A simultaneous tort arising from the act of recording itself is insufficient."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 (3d Cir. 2016); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording."). If the interception is the crime or tort, the crime-tort exception does not apply. Otherwise, the crime-tort exception would negate the party exception established by the statute. *See Phillips*, 540 F.2d at 327 n.5; *Newman*, 51 F.4th at 1136 (noting that holding otherwise would be "circular").

The Complaint does not allege any torts or violations ***independent*** from the alleged interception—rather, the alleged torts and violations arise out of the alleged interception itself. Therefore, even if Hennepin committed these violations, the crime-tort exception still would not apply. *See Okash*, 2024 WL 1285779, at *4 (dismissing ECPA claim because plaintiff's "allegations that [defendant] violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta" and were not independent).

### 3. Plaintiffs do not allege a *contemporaneous* tortious or criminal purpose.

The crime-tort exception applies only if the defendant had the criminal or tortious purpose at the time of the interception. *Stewart v. City of Okla. City*, 47 F.4th 1125, 1135 (10th Cir. 2022) ("The plain language of §2511(2)(d) requires that we ask whether, at the time a communication was intercepted, the consenting party possessed a criminal or tortious intent.") (emphasis in original); *Caro*, 618 F.3d at 99-100 (granting a motion to dismiss for lack of independent tort and requiring that the tortious or criminal purpose be contemporaneous with the interception); *Jiau*, 734 F.3d at 152. Even if Plaintiffs alleged Hennepin intended to commit a crime or tort, Plaintiffs do not plausibly allege that Hennepin had criminal or tortious intent at the time the alleged interceptions occurred.

### 4. Plaintiffs do not allege Hennepin intended to harm them personally with any supposed crime or tort.

Finally, the defendant must have intercepted the communication "with an intent to use that interception against the non-consenting party in some harmful way." *Meredith*, 446 F.2d at 799 (holding that recording conversation to impeach did not violate ECPA because it was not meant "to positively harm the plaintiff"); *Caro*, 618 F.3d at 100. Plaintiffs do not allege that Hennepin intended to harm Plaintiffs.

## D. Plaintiffs fail to state a claim for "procurement" or "use."

To the extent the Complaint alleges Wiretap Claims for "procurement" or "use," those claims also fail.

ECPA does not provide a cause of action for procuring. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000). Plaintiffs' "procuring" claim fails.

Under ECPA, "use" requires an underlying "interception." *See* §2511(1)(c)-(d). "Use" also requires that the user knew or should have known that the communication was intercepted unlawfully. *Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir. 1994); *Thompson v. Dulaney*, 970 F.2d 744, 750 (10th Cir. 1992); *Hari v. Smith*, No. 20-cv-1455, 2022 WL 1122940, at *19 (D. Minn. Jan. 31, 2022) (citing *Thompson*), *R.&R. adopted*, 2022 WL 612100 (D. Minn. Mar. 2, 2022).

Plaintiffs allege Hennepin was the interceptor, therefore the party exception applies; accordingly, there was no "interception" and no "use." *See Okash*, 2024 WL 1285779, at *4 ("But the party exception applies . . . . Accordingly, [plaintiff] does not plead an unlawful interception. And because the use and disclosure prohibitions require an underlying unlawful interception, neither were those provisions violated."). To the extent Plaintiffs contend a non-party was the interceptor and that Hennepin had knowledge that the communication was intercepted unlawfully, Plaintiffs have failed to plausibly allege facts to support that claim.

The Court should dismiss Counts I and II.

## IV. PLAINTIFFS FAIL TO STATE AN INVASION-OF-PRIVACY CLAIM (COUNT III).

As a threshold matter, Hennepin is immune from suit and cannot be held liable for the torts alleged by Plaintiffs. *See* Minn. Stat. §§383B.919, 466.01, subd. 1 (defining "municipality" as including "public corporation[s]"). Chapter 466 is Minnesota's Municipal Tort Liability Act, which provides that municipalities and public corporations such as Hennepin can be liable for their torts and the torts of their employees. However,

section 466.03 includes several exceptions that preclude liability for certain tort claims, including subdivision 8, which provides that municipalities are immune from liability for "[a]ny claim for a loss other than injury to or loss of property or personal injury or death." In this case, Hennepin is immune from Plaintiffs' invasion of privacy claim because Plaintiffs have not alleged any personal injury or death or a claim for property loss or injury to property.

Even if Hennepin were not immune from suit, Plaintiffs fail to state a claim for invasion of privacy. A claim of invasion of privacy for intrusion upon seclusion[7] "has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1078 (D. Minn. 2014). For an intrusion to occur, a defendant must partake in an "affirmative act . . . in obtaining the information" at issue. *Lehman v. Zumbrota-Mazeppa Pub. Schs.*, No. A04-1226, 2005 WL 894756, at *4 (Minn. Ct. App. Apr. 19, 2005).

When a plaintiff voluntarily provides information to a defendant, the defendant has not intruded into the plaintiff's private affairs, even if that information is subsequently disclosed. *See id.* (affirming lack of intrusion when plaintiff voluntarily provided his medical leave letter that was later disclosed to the press); *C.L.D. v. Wal-Mart Stores, Inc.*,

---

[7] Plaintiffs do not specify on which theory their claim of invasion of privacy is based. (See Doc. 1 ¶¶209-22.) Hennepin assumes Plaintiffs assert a claim for intrusion upon seclusion because Plaintiffs do not allege Hennepin has appropriated their names or likenesses, nor do they allege Hennepin communicated their private information "to the public at large." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 557 (Minn. 2003) (quoting Restatement (Second) of Torts §652D cmt. a).

79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) ("[P]laintiff voluntarily disclosed her medical circumstances to [defendant] and cannot claim that he obtained the information by intrusive means.").

Courts have dismissed intrusion-upon-seclusion claims under nearly identical facts as those alleged here. *See Mekhail*, 2024 WL 1332260, at * 12 (dismissing invasion-of-privacy claims because "an intrusion by [hospital defendant] cannot be plausibly alleged where [plaintiff] concedes that it was Meta (or Meta's Pixel), rather than [defendant], that made the interception"); *Okash*, 2024 WL 1285779, at *7 & n.9 ("Courts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta."); *but see Grp. Health Plan*, 2023 WL 8850243, at *3 (concluding use of Facebook Pixel is "suggestive of intentional" intrusion). Because Plaintiffs voluntarily engaged in communications with Hennepin, Hennepin could not have intruded into Plaintiffs' private affairs. *See Okash*, 2024 WL 1285779, at *7.

Finally, even if Hennepin committed an intrusion, Plaintiffs fail to plausibly allege this was "highly offensive." "Courts . . . have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014). This is particularly true where the data allegedly collected is not "sufficiently specific or personal." *Hammerling*, 615 F. Supp. 3d at 1091. "Even disclosure of highly personal information such as social security numbers is not 'highly offensive.'" *Id.* (citing *Low*, 900 F. Supp. at 1025).

Plaintiffs' allegations are nothing other than "routine commercial behavior." *Hammerling*, 615 F. Supp. 3d at 1090; *but see Grp. Health Plan*, 2023 WL 8850243, at *3. Moreover, any alleged collection of Plaintiffs' IP addresses or URL data from browsing publicly accessible information is not sufficiently personal or specific.

Count III should be dismissed.

## V. PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM (COUNT IV).

Plaintiff's negligence claim must be dismissed because Hennepin is immune from suit under Minn. Stat. §466.03, subd. 8. *See* argument *infra*.

Even if Hennepin were not immune from suit, Plaintiffs' claim still fails. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). To succeed on a negligence claim, "a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.*

Plaintiffs allege that "[m]edical providers have a duty to their patient to keep their patients' Personal Information completely confidential." (Doc. 1 ¶224 (citing Minn. Stat. §144.651, subds. 15-16; Minn. Stat. §144.293).) Plaintiffs' cited code sections protect health, medical care, treatment, and other similar records. *See also* Minn. Stat. §144.291, subd. 2(c) (defining "health record"). Plaintiffs allege a disclosure of "Personal Information," but that term includes information that is *not* protected by statute. Therefore, Plaintiffs fail to establish the information Hennepin allegedly shared with third parties is a health record that Hennepin has a duty to protect. For instance, Plaintiffs do not plead that

a single diagnosis, treatment, medication, or any other medical record of theirs was disclosed to any third party. Instead, they allege Hennepin shared browsing metadata, which is not confidential health records under Minnesota law. *See* Section X, *infra* (discussing Plaintiffs' failure to allege any health record under the MHRA). Accordingly, Plaintiffs have not alleged that Hennepin breached any duty to them. The Court should dismiss Plaintiffs' negligence claim.

## VI. PLAINTIFFS FAILED TO STATE A BREACH-OF-IMPLIED-CONTRACT CLAIM (COUNT V).

A claim for breach of implied contract requires a plaintiff to allege "the formation of a contract, performance by the plaintiff of any conditions precedent, a material breach of the contract by the defendant, and damages." *Chey v. Metro. Airports Comm'n*, No. 22-CV-1429, 2023 WL 2308272, at *6 (D. Minn. Mar. 1, 2023). "[A] contract 'may be implied in fact where the circumstances . . . clearly and unequivocally indicate the intention of the parties to enter into a contract.'" *Id.* (citation omitted). There must be "a meeting of the minds as to the terms of the contract." *Tri-State Bobcat, Inc. v. FINN Corp.*, 338 F. Supp. 3d 971, 982 (D. Minn. 2018). Whether the parties' mutual assent to the essential elements of the implied contract existed "is tested under an objective standard." *Azarax, Inc. v. Syverson*, 398 F. Supp. 3d 425, 436 (D. Minn. 2019) (citation omitted).

Plaintiffs appear to base their implied-contract claim on Hennepin's privacy policies. (*See* Doc. 1 ¶¶108-18.) Even if the privacy policies were an implied contract, they were not breached because they expressly provide that Hennepin may collect and share data with third parties. (Privacy Policy at 1-3; Privacy Practices at 1-4.)

Further, Plaintiffs do not allege any cognizable breach-of-contract damages. Plaintiffs allege their damages are "the loss of the benefit of their bargain and diminution in value of Personal Information." (Doc. 1 ¶236.) Plaintiffs allege no facts supporting either of these damages. In particular, the Complaint contains no plausible factual allegations that the value of this data has diminished. *See Khan v. Child. Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (dismissing claims where third parties obtained actual medical records and Social Security numbers because plaintiff had not explained how "possession of that information has diminished its value, nor does she assert that she would ever actually sell her own personal information"); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930-31 (N.D. Cal. 2015) (holding that, although the information may have "significant" "economic value" plaintiffs failed to "connect this value to a realistic economic harm or loss that is attributable to Facebook's alleged conduct" in part because plaintiffs failed to allege "they personally lost the opportunity to sell their information"); *but see Grp. Health Plan*, 2023 WL 8850243, at *3-4.[8]

Because Plaintiffs have not sufficiently alleged that Hennepin breached an implied contract or that Plaintiffs suffered damages, the Court should dismiss this claim.

[8] Again, *In re Grp. Health Plan* is distinguishable. The Court found a breach of implied contract by a health organization that shared the plaintiff's "private information" without consent, but in that case, the organization disclosed personally identifiable and health information, not website activities. 2023 WL 8850243, at *3-4. *See* argument *infra* §X.

## VII. PLAINTIFFS FAIL TO STATE AN UNJUST-ENRICHMENT CLAIM (COUNT VI).

"To state a claim for unjust enrichment, a plaintiff must allege facts showing that the plaintiff conferred a benefit on the defendant, the defendant appreciated and knowingly accepted the benefit, and the defendant's acceptance and retention of the benefit under the circumstances would be unjust or inequitable." *Hall v. Centerspace, LP*, No. 22-cv-2028, 2023 WL 3435100, at *6 (D. Minn. May 12, 2023). A plaintiff must also allege "an uncompensated benefit." *Amann v. Allianz Income Mgmt. Servs., Inc.*, No. A09-1891, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010). Minnesota courts "have limited the application of unjust enrichment to claims premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).

As set forth above, Plaintiffs fail to plausibly allege any implied contract related to their use of the website. Plaintiffs also fail to plausibly allege they conferred an uncompensated benefit on Hennepin. Plaintiffs allege that, by using Hennepin's website, they conferred a benefit upon Hennepin, which Hennepin unjustly retained. (Doc. 1 ¶240.) However, the Complaint provides only vague and conclusory allegations in connection with this claim, alleging Hennepin received "economic, intangible, and other benefits, including substantial monetary compensation," without providing any facts including what

those benefits are or who provided the monetary compensation. (*Id.*) This conclusory allegation is insufficient to plausibly allege a benefit. *See Iqbal*, 556 U.S. at 678.[9]

Even if Plaintiffs conferred a benefit on Hennepin, the Complaint fails to allege any benefit was "uncompensated." *See Amann*, 2010 WL 3220061, at *5. Rather, Plaintiffs allege they received substantial benefits from the use of Hennepin's website including the ability to communicate with Hennepin and research health conditions and providers. (*See* Doc. 1 ¶¶81, 98.) To the extent Plaintiffs argue they should have received more "compensation" in exchange for their use of Hennepin's website, this cannot support an unjust-enrichment claim. *See Cady v. Bush*, 166 N.W.2d 358, 362 (Minn. 1969) ("[U]njust enrichment should not be invoked merely because a party has made a bad bargain."); *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 855 (8th Cir. 2014).

Moreover, "the plausibly alleged exchange" was Hennepin providing healthcare to Plaintiffs in exchange for payment. *Hall*, 2023 WL 3435100, at *7. Hennepin's data practices on its website cannot serve as the basis for an unjust-enrichment claim because Plaintiffs do not allege they paid more for healthcare to prevent data sharing than those who did not provide data on Hennepin's website. *See id.*

Finally, the Complaint does not allege Hennepin acted unjustly. Plaintiffs' basis for their unjust-enrichment claim is that Hennepin used tracking technologies and shared

[9] The court in *Mekhail* found there was a benefit conferral based on specific allegations of the data's value and specific ways the data benefitted the health organization. 2024 WL 1332260, at *13. In contrast, Plaintiffs have not pleaded benefit conferral with requisite specificity.

information with third parties. (*See* Doc. 1 ¶240.) However, this was not "unjust" because Hennepin disclosed that it would use tracking technologies, including cookies and Google Analytics, and third parties may receive information. (*See* Privacy Policy at 2-3.) It is not plausibly "unjust" for Hennepin to act consistently with its statements to Plaintiffs. *But see Mekhail*, 2024 WL 1332260, at *13. That Hennepin allegedly benefited from this practice does not give rise to an unjust-enrichment claim. *See Caldas*, 820 N.W.2d at 838.

Plaintiffs' claim for unjust enrichment should be dismissed.

## VIII. PLAINTIFFS FAIL TO STATE A MINNESOTA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT CLAIM (COUNT VII).

Plaintiffs allege Hennepin violated the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), Minn. Stat. §325D.44, subds. 1(5), (7), which bars certain misrepresentations regarding the nature of goods and services offered in the course of business. MUDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. §325D.45, subd. 1. Rule 9(b)'s heightened pleading standard applies to MUDTPA claims. *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012).

### A. Plaintiffs fail to allege a future harm.

To have Article III standing for this claim, a plaintiff must allege that an injunction would redress an imminent injury for the plaintiff. *Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir. 2000). The only remedy available under MUDTPA is injunctive relief for future harms. *See* Minn. Stat. §325D.45; *see also Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-2970, 2022 WL 486999, at *1 (D. Minn. Feb. 17, 2022) ("The MDTPA's

only remedy is injunctive relief."). Even if a plaintiff has standing for a damages claim for past harms, the plaintiff may not have standing when seeking injunctive relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021); *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

MUDTPA creates a remedy for "[a] person likely to be damaged by a deceptive trade practice." Minn. Stat. §325D.45, subd. 1. To state a claim under MUDTPA, a "plaintiff must allege 'a likelihood of future harm.'" *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (citation omitted). The analysis of whether a plaintiff has shown a likelihood of future harm under MUDTPA converges with the threat-of-future-harm inquiry under Article III. *Barclay*, 2022 WL 486999, at *2 (holding that MUDTPA's likelihood-of-harm requirement is "indistinguishable from Article III's threat-of-future-harm requirement").

Here, Plaintiffs cannot show they are likely to suffer future harm because they are on notice of the allegedly deceptive practice and thus can no longer be deceived or harmed by continued violations. *See Jaskulske*, 2014 WL 5530758, at *6 ("Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice."); *see also Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012) (explaining that plaintiff who "personally experienced" allegedly deceptive practice was "clearly aware of the practice and is unlikely to be confused in the future"). Furthermore, Plaintiffs' risk of future harm is speculative, not imminent, because they do not allege they must imminently use Hennepin's website or medical services. *See Lujan v. Defs. of Wildlife*, 504

U.S. 555, 564 & n.2 (1992) (holding that plaintiffs lacked standing despite alleging they had visited a place allegedly affected by the defendant and they intended to return there someday). Plaintiffs' alleged harms are based on Hennepin's past practices. An injunction would not redress these because third parties allegedly already have the data. Plaintiffs have no standing for this claim. *See Barclay*, 2022 WL 486999, at *2 (denying motion for reconsideration of dismissal of MUDTPA class action claim for lack of standing).

**B. Plaintiffs cannot maintain a MUDTPA claim against Hennepin**.

Even if the Court has jurisdiction, MUDTPA does not create a private cause of action against municipalities, and therefore, Plaintiffs' claim that Hennepin engaged in deceptive trade practices must be dismissed. *See Headwaters Rural Util. Ass'n, Inc. v. City of Corcoran*, No. CT 03-013842, 2004 WL 5724110 (Minn. Dist. Ct. Oct. 1, 2004). Section 325D.45, subdivision 1 permits actions for injunctive relief against "[a] person [who] engages in a deceptive trade practice . . . ." Minn. Stat. §325D.44, subd. 1(14). MUDTPA does not define "person." Absent a statutory definition, "person" is defined as "[a] human being." *Person*, *Black's Law Dictionary* (12 ed. 2024). At least one Minnesota court has concluded that municipalities such as Hennepin "are not 'persons' for purposes of the [MUDTPA]." *Headwaters*, 2004 WL 5724110. Accordingly, Plaintiffs cannot maintain a MUDTPA claim against Hennepin.

**C. Plaintiffs fail to plausibly allege deceptive statements**.

Plaintiffs' MUDTPA claim also fails on the merits. The Complaint alleges that Hennepin: (1) mispresented or omitted information related to whether it would reasonably protect the privacy of Plaintiffs' information; and (2) misrepresented or omitted

information related to its compliance with the law. (*See* Doc. 1 ¶249(d)-(g).) To prevail, Plaintiffs must show that Hennepin's misrepresentations or omissions could have "deceive[d] a reasonable consumer." *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020) (citation omitted), *aff'd*, 27 F.4th 1339 (8th Cir. 2022).

In this case, no reasonable consumer could be deceived by Hennepin's practices because Hennepin's Privacy Policy specifically and affirmatively notified users of Hennepin's collection and use of users' information, including via cookies and Google Analytics. Hennepin's website thus cannot be considered "deceptive," when it provided notice of the technology on which the Complaint is based. *See id.*; *but see Mekhail*, 2024 WL 1332260, at *8.

**D. Plaintiffs fail to allege a causal nexus**.

Plaintiffs must allege "a causal nexus between the conduct alleged to violate [Minnesota consumer protection laws] and the damages claimed." *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 4 (Minn. 2001). Even if a plaintiff alleges that some market participants relied on a defendant's statements, that alone is insufficient to show a causal nexus. *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1098 (D. Minn. 2017).

Plaintiffs' only allegation about reliance is the unsupported conclusion that they "acted reasonably in relying on Defendant's misrepresentations and omissions." (Doc. 1 ¶255.) Plaintiffs do not identify where or how Hennepin supposedly misrepresented or omitted information related to data tracking. Given that Hennepin's website affirmatively disclosed the collection and use of users' information, Plaintiffs fail to specifically allege

a "causal nexus" between an alleged misrepresentation and any damages they have suffered. *See Luckey*, 245 F. Supp. 3d at 1098 (dismissing MUDTPA claim where the complaint contained only the conclusory statement that "'purchasers' relied on Alside's offending statements" and "no factual allegations about who heard or saw and relied on" supporting this conclusory statement).

### E. Plaintiffs' MUDTPA claim is moot because Hennepin has disabled tracking technologies on its website.

Even if Plaintiffs could overcome these obstacles, the Court should dismiss the MUDTPA claim as moot because Gillette has disabled Meta Pixel and Google Analytics.[10] Plaintiffs are not likely to be harmed in the future and injunctive relief would not redress any alleged harm because Gillette has already stopped the practices complained of. *See Kurowski*, 683 F. Supp. 3d at 847-48 (dismissing analogous deceptive-trade-practices-act claim where the healthcare defendant ceased transmissions to Google and Facebook).

## IX. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MINNESOTA CONSUMER FRAUD ACT (COUNT VIII).

The Minnesota Consumer Fraud Act ("MCFA") prohibits "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat.

---

[10] The Court may consider these facts for this Motion. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *Nelson*, 951 F.3d at 955-56; *WinRed, Inc v. Ellison*, 581 F. Supp. 3d 1152, 1167 n.9 (D. Minn. 2022) (noting courts may consider the content of a party's website), *aff'd*, 59 F.4th 934 (8th Cir. 2023) Plaintiffs can verify these facts using the same methods they allegedly detected their presence in the first place. (*See* Doc. 1 ¶¶65-72.)

§325F.69, subd. 1. Rule 9(b)'s heightened pleading standard applies to MCFA claims. *E-Shops*, 678 F.3d at 665. Plaintiffs must allege the circumstances constituting the alleged MCFA violation with particularity by specifically setting forth "the who, what, when, where, and how." *Id.* at 666 (affirming dismissal of an MCFA claim for failure to plead with particularity). Plaintiffs' MCFA claim fails for several independent reasons.

**A. Plaintiffs cannot maintain an MCFA claim against Hennepin.**

Municipalities are not subject to suit under the MCFA, therefore, Plaintiffs' MCFA claim must be dismissed. The MCFA prohibits certain deceptive or fraudulent practices by a "person." Minn. Stat. §325F.69, subd. 1. Section 325F.68, subdivision 3 defines "person" as "any natural person or a legal representative, partnership, corporation (domestic and foreign), company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof." This definition does not include municipalities. *See First Nat'l Bank*, 709 N.W.2d at 299 (holding this definition "does not encompass the state as an entity" and dismissing the claim against the state). Therefore, Plaintiffs' claim fails.

**B. Plaintiffs fail to allege the MCFA claim may proceed under Minnesota's private attorney general statute.**

An MCFA private cause of action arises only through Minnesota's private attorney general statute, Minn. Stat. §8.31, subd. 3a. *See Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000); Minn. Stat. §325F.70, subd. 1. When pursuing private MCFA causes of action, plaintiffs must demonstrate their case provides a public benefit. *Ly*, 615 N.W.2d at 314.

Courts dismiss MCFA claims when the plaintiff fails to plausibly allege a public benefit. *See Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 889-90 (D. Minn. 2021); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 936, 940 (D. Minn. 2014). In *Gisairo*, the court dismissed a putative class action MCFA claim for failure to plead a public benefit. 516 F. Supp. 3d at 890. Although the complaint alleged an ongoing misrepresentation about the defendant's product on the defendant's website, the court held that those allegations did not establish the representations were directed at the public, and the primary relief sought was damages for past harm. *Id.* at 889-90. As the court explained, MCFA claims alleging false advertising to the public do not necessarily create a public benefit. *Id.* at 889 (citing *Select Comfort*, 11 F. Supp. 3d at 938)).

The Complaint does not plead sufficient facts showing that Plaintiffs' MCFA claim will benefit the public. Plaintiffs allege that Hennepin made a misrepresentation "to the public at large," (Doc. 1 ¶265), but this allegation is "not enough to establish a public benefit," *Gisairo*, 516 F. Supp. 3d at 889 (quoting *Select Comfort*, 11 F. Supp. 3d at 938). Indeed, the primary relief Plaintiffs seek is monetary damages for past harms. (Doc. 1 ¶268.) Primarily seeking damages for past harms does not benefit the public. *Gisairo*, 516 F. Supp. 3d at 890. Accordingly, because Plaintiffs have failed to plead a public benefit, their claim must fail.

### C. The Complaint fails to allege a plausible misrepresentation or omission.

Even if Hennepin were subject to suit under the MCFA and Plaintiffs were to allege a public benefit, their MCFA claim still fails. As noted above, to state an MCFA claim, a plaintiff must allege either a "fraud, unfair or unconscionable practice, false pretense, false

promise, misrepresentation, misleading statement or deceptive practice," Minn. Stat. §325F.69, subd. 1, or "an omission of material fact, [and] special circumstances that trigger a duty to disclose," *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 696 (Minn. 2014).

Plaintiffs allege that Hennepin: (1) misrepresented that it complied with law; (2) misrepresented that it acted in accordance with healthcare standard practices; and (3) omitted reference to Meta Pixel on its website. (*See* Doc. 1 ¶¶265-66.)

**1. The MCFA claim cannot proceed on a compliance-with-law theory.**

The first alleged misrepresentation—that Hennepin misrepresented its compliance with the law—fails. In *Bernstein v. Extendicare Health Servs., Inc.* ("*Bernstein I*"), 607 F. Supp. 2d 1027 (D. Minn. 2009), the court dismissed the MCFA and MUDTPA class-action claims against the owner and operator of a nursing home. There, the plaintiff alleged that defendants falsely stated they would "provide care in accordance with or exceeding applicable laws and regulations" and that they had "established rigorous standards" for caring for their "health care customers." *Id.* at 1030. In its dismissal, the court reasoned that, even if the defendants had broken the law, the defendants' statements were non-actionable "puffery" that "cannot serve as the basis for a claim under any of the consumer protection statutes." *Id.* at 1031-32. The court held those statements do not establish "any particular standard or make[] any specific promise." *Id.* at 1032; *see also Bernstein v. Extendicare Health Servs., Inc.* ("*Bernstein II*"), 653 F. Supp. 2d 939, 943 (D. Minn. 2009)

(denying motion for reconsideration and holding that claims predicated on services not provided in compliance with law "cannot form the basis of a consumer protection action.").

Like *Bernstein*, Plaintiffs' MCFA claims arise out of alleged misrepresentations and omissions related to its compliance with applicable laws, regulations, and standards. The Complaint does not allege which laws Hennepin supposedly represented that it would comply with. Nor do the statements create an independent legal obligation that can be vindicated by the MCFA. *See Bernstein I*, 607 F. Supp. 2d at 1032. "A consumer protection action simply is not the path to resolution" for any alleged violations of healthcare law or regulations. *Id.* The Court should dismiss Plaintiffs' MCFA claim.

### 2. The MCFA claim cannot proceed on a "healthcare standard practices" theory.

The second alleged misrepresentation—compliance with "healthcare standard practices"—also fails. (Doc. 1. ¶265.) The Complaint does not even identify where Hennepin made such a statement. Even if Hennepin had made that statement, the Complaint does not allege what the "standards" are or how Hennepin failed to comply with them. As in *Bernstein*, a claim based on alleged noncompliance with "standard practices" relies on vague, puffing language that cannot serve as the basis for an MCFA claim. *See Bernstein I*, 607 F. Supp. 2d at 1032 (dismissing an MCFA claim based on a representation of establishing "rigorous standards").

### 3. The MCFA claim cannot proceed on an omission theory.

Plaintiffs allege that Hennepin did not disclose its use of the Meta Pixel or that it was sharing data with Meta. (Doc. 1 ¶266.) However, an MCFA claim based upon an

omission must allege "not only an omission of material fact, but also special circumstances that trigger a duty to disclose." *Graphic Commc'ns*, 850 N.W.2d at 696. Plaintiffs fail to plead either a "special circumstance" or a "material" omission.

The Minnesota Supreme Court has recognized three "special circumstances": (1) "a confidential or fiduciary relationship"; (2) "special knowledge of material facts to which the other party does not have access"; and (3) "a person who speaks must say enough to prevent the words communicated from misleading the other party." *Id.* at 695. Plaintiffs fail to plead any of these circumstances at all, let alone with particularity.

First, Plaintiffs do not allege a fiduciary or confidential relationship based on website users' interactions with a public website. Second, Plaintiffs fail to plead a specialized-knowledge duty, because that circumstance requires "allegations of 'actual knowledge of fraudulent activity,' not exclusive knowledge of certain facts." *Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 937 (D. Minn. 2022) (quoting *Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W.2d 648, 651 (Minn. 1976)). Moreover, as the Complaint demonstrates, Plaintiffs also had access to this information, because it was possible for Plaintiff to determine that Hennepin's website was sending information to Meta. (*See* Doc. 1 ¶¶67-69.)

Finally, Plaintiffs fail "to allege any affirmative statement apart from the [Privacy Policy] itself that would have required additional explanation." *Grady*, 643 F. Supp. 3d at 937. The Privacy Policy, however, explicitly states Hennepin may disclose information to third parties. (Privacy Policy at 2.)

Even if the Complaint alleged a special circumstance applied, the Complaint does not allege an "omission of material fact." *See Graphic Commc'ns*, 850 N.W.2d at 696. Hennepin disclosed that it may share information with third parties and that it uses tracking technologies. (Privacy Policy at 2-3.) The only omission Plaintiffs plausibly allege is the omission of the specific technology Hennepin used and who it shared information with, i.e., "Meta Pixel" and "Meta." The Complaint does not plausibly allege that including "Meta Pixel" and "Meta" as examples of technologies or third parties would be "material."

### D. The Complaint fails to allege the necessary scienter for an MCFA claim.

A plaintiff must plead the defendant acted "with the intent that others rely" on the alleged misrepresentation. Minn. Stat. §325F.69, subd. 1. Under *Ly*, the defendant's conduct "must have been intended to deceive someone." 615 N.W.2d at 310. Courts dismiss MCFA claims when plaintiffs fail to allege an intent to deceive. *See Pickford v. Kemp & Assocs., Inc.*, No. 19-CV-997, 2019 WL 3537219, at *3 (D. Minn. Aug. 2, 2019) ("Without specific allegations of intentional fraud, the Plaintiffs' MCFA claim cannot survive the motion to dismiss."). Here, the Complaint does not plead any facts, let alone specific allegations, demonstrating that Hennepin intended to deceive Plaintiffs.

### E. The Complaint does not allege a misrepresentation "in connection with the sale of any merchandise."

The MCFA only applies to misrepresentations "in connection with the sale of any merchandise." Minn. Stat. §325F.69, subd. 1. It "does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise." *Grady*, 643 F. Supp. 3d at 935 (quoting *Banbury v. Omnitrition Int'l, Inc.*,

533 N.W.2d 876, 882 (Minn. Ct. App. 1995)); *see also Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1113 (D. Minn. 2009) (dismissing an MCFA claim where the alleged misrepresentations were unrelated to the sale of merchandise).

The Complaint does not allege the use of Hennepin's website is a "sale of merchandise." Indeed, to the extent there is a "sale" at issue here at all, the only plausibly alleged sale is the provision of healthcare. (*See* Doc. 2 ¶264.) Assuming healthcare services constitute "merchandise" under the MCFA, *see* Minn. Stat. §325F.68, subd. 2, the Complaint does not allege that Hennepin misrepresented the nature or quality of its healthcare services. *See Mekhail*, 2024 WL 1332260, at *6 (dismissing MFCA claim against hospital alleging "a misrepresentation related to data privacy, [because the hospital] is not in the business of providing data privacy services"); *Moua*, 613 F. Supp. 2d at 1113. The alleged misrepresentation relates to Plaintiffs' *use* of Hennepin's website. Accordingly, there is no connection or nexus between the alleged misrepresentation and the sale of merchandise to state a claim under the MCFA.

### F. The Complaint does not allege a causal nexus between any wrongful conduct and any harms.

A complaint must also allege a "causal relationship between an alleged injury and the alleged wrongful conduct." *Bernstein II*, 653 F. Supp. 2d at 944. This causal nexus includes "a reliance component" on the alleged misrepresentation. *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008). The Complaint does not allege reliance on any misrepresentation that supports a causal nexus between the alleged misrepresentation and Plaintiffs' alleged injuries.

The Court should dismiss the MCFA claim.

## X. PLAINTIFFS FAIL TO STATE A MINNESOTA HEALTH RECORDS ACT CLAIM (COUNT IX).

Plaintiffs' claim that Hennepin violated the Minnesota Health Records Act ("MHRA"), Minn. Stat. §§144.291-.298, must be dismissed because Plaintiffs fail to plausibly allege that Hennepin disclosed their "health records" to Meta or any other third party. (*See* Doc. 1 ¶¶270-80.)

"The [MHRA] governs the release of a patient's health-related records by health-care providers." *Expose v. Thad Wilderson & Assocs., P.A.*, 863 N.W.2d 95, 102 (Minn. Ct. App. 2015), *aff'd*, 889 N.W.2d 279 (Minn. 2016). Under the MHRA, a healthcare provider "may not release a patient's health records to a person without" the patient's "consent" or "specific authorization in law." Minn. Stat. §144.293, subd. 2. Where there is no "release and disclosure of 'health records,'" the MHRA does not apply. *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804, at *2 (Minn. Ct. App. Mar. 4, 2019) (citing Minn. Stat. §§144.293, subds. 1-2, 144.298, subd. 2).

Under the MHRA, a "health record" includes any information "that relates to the past, present, or future physical or mental health or condition of a patient; the provision of health care to a patient; or the past, present, or future payment for the provision of health care to a patient." Minn. Stat. §144.291, subd. 2(c). "Health records" afforded protection under the MHRA include "laboratory reports, x-rays, prescriptions, and other technical information." *Furlow v. Madonna Summit of Byron*, No. A19-0987, 2020 WL 413356, at *2 (Minn. Ct. App. Jan. 27, 2020) (quoting Minn. Stat. §144.292, subd. 5(1)).

This definition does not extend to documents or records from which a person's health condition or patient status can be "inferred" or "deduce[d]." *Furlow*, 2020 WL 413356, at *2-3; *Rhoades*, 2019 WL 1006804, at *1-2. Instead, to qualify as a "health record," a record must "expressly state" an individual's "past, present, or future physical or mental health condition" as a patient or provision of health care. *Furlow*, 2020 WL 413356, at *3.

Here, Plaintiffs assert the unsupported conclusion that by using Hennepin's website, Plaintiffs exchanged "Personal Information" with Hennepin that falls within the definition of "health records" under the MHRA. (*See* Doc. 1 ¶272.) Plaintiffs further allege that by embedding the Pixel onto its website, Hennepin unlawfully disclosed their health records to Meta. (*See id.* ¶275.) These allegations do not support an MHRA claim.

Courts have disposed of similar theories under HIPAA (which has nearly identical language to the MHRA). As the Ninth Circuit held in *Smith v. Facebook, Inc.*, "the connection between a person's browsing history and his or her own state of health is too tenuous to support . . . the disclosure requirement of HIPAA." 745 F. App'x 8, 9 (9th Cir. 2018). In *Kurowski*, the court found that the "hypothetical data disclosures" from the plaintiff's "clicks on certain areas of [the health provider's] public website" did not involve the "the past, present, or future physical or mental health or condition of an individual."2023 WL 2349606, at *5; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (concluding that URLs reflecting searches for doctors, melanoma treatment, and intestine transplants did not relate to the "past, present, or future physical or mental health or condition of an individual").

Minnesota courts have dismissed MHRA claims where the record did not constitute a "health record" because it did not "expressly state" the individual's "past, present, or future physical or mental health condition." *Furlow*, 2020 WL 413356, at *2-3; *Rhoades*, 2019 WL 1006804, at *1-2. In *Furlow*, the court affirmed the district court's decision granting a motion to dismiss on the basis that the record at issue did not "expressly state" the individual's health condition and, accordingly, did not qualify as a "health record" under the MHRA. 2020 WL 413356, at *1, 3. In *Rhoades*, the court affirmed the granting of a motion to dismiss, holding that a form that contained substantial information about the plaintiff, from which his status as a patient could be "deduced" or "inferred," nevertheless did not qualify as a "health record." 2019 WL 1006804, at *1-2.

Here, Plaintiffs fail to allege Hennepin unlawfully disclosed a "health record" under the MHRA. Plaintiffs did not expressly share—nor did Hennepin collect—any information about their "past, present, or future physical or mental health or condition[s]" to create a "health record." Plaintiffs' clicking around Hennepin's website to "research treatments, lookup physicians, and schedule appointments" could, at most, permit an "inference" that Plaintiffs *might be* experiencing a particular illness or looking for a particular doctor. (*See* Doc. 1 ¶2); *see Am. Hosp. Ass'n*, 2024 WL 3075865, at *12-13 (holding that similar types of information are at most "indicative of" or "*may* relate to" individually identifiable health information and therefore are not protected by HIPAA). Regardless of any inference, Plaintiffs' searches fail to disclose any substantive health information protected under the MHRA. Further, a health record under the MHRA must relate to the health or condition of a *patient*. Hennepin's website provides general health information accessible to the public.

*Anyone*—not just patients—can use Hennepin's website at any time, for any purpose. *See Am. Hosp. Ass'n*, 2024 WL 3075865, at *13-14 (holding that similar types of information do not "identify" patients even where persons search for information related to themselves).

Because Plaintiffs' communications with Hennepin are not "health records" under the MHRA, Plaintiffs have failed to allege any unlawful disclosure of the same. Count IX cannot survive.

## CONCLUSION

The Court should grant Hennepin's Motion to Dismiss.

Dated: October 1, 2024

*s/ Natasha T. Robinson*

Nicole M. Moen (#0329435)
Natasha T. Robinson (#0399625)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
nmoen@fredlaw.com
nrobinson@fredlaw.com

Katherine Clancy (#0399739)
Assistant Hennepin County Attorney
2000A Government Center, MC200
300 South Sixth Street
Minneapolis, MN 55487
(612) 348-3427
katherine.clancy@hennepin.us

***Attorneys for Defendant***